IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KEN YEO,

    Plaintiff,

vs.

WASHINGTON COUNTY,
MULTNOMAH COUNTY, PRISON HEALTH
SERVICES, INC.,

    Defendants.

Civil No. 08-1317-AC

DECLARATION OF J. TERESA
SHELBY, M.D., IN SUPPORT OF
PLAINTIFF'S RESPONSE TO
DEFENDANTS' MOTIONS FOR
SUMMARY JUDGMENT

I, J. Teresa Shelby, M.D. do declare and state as follows:

1.    I am a board-certified psychiatrist who has continually practiced psychiatry in the Portland-Beaverton area since 1984. I completed residency training at OHSU in 1984. I have had extensive clinical experience assessing and treating individuals with psychotic, bipolar, and schizoaffective disorders. My curriculum vitae is attached to this declaration as Exhibit 1.

2.    I have been able to review medical records and jail records of Kenneth Ryan Yeo, DOB 7/29/77 including Washington County Jail records from 2005 and 2007, Multnomah County Jail records from 2007, OHSU hospital and emergency department records from 2007,

1    DECLARATION OF J. TERESA SHELBY, M.D., IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

Sequoia/Homestreet/Banyan Tree  Outpatient records 2005-2009, Providence St. Vincent records 1978-2007, Telecare Recovery Center records 2003, and Peace River Center records 1996-97. The records reviewed are of the type typically relied upon by experts in my field.

    3.    Based on my review of records, Mr. Yeo experienced the onset of mental illness in his adolescent years.  By age 19, he was receiving social security disability income and had been diagnosed with Bipolar illness. By 1995, he had already had at least seven psychiatric hospitalizations.  By 2003, the diagnosis has been changed to schizoaffective illness, which indicates a mixture of bipolar and schizophrenic symptoms. During exacerbations of his illness, he would become highly agitated, unreasonable, angry, paranoid, delusional, and at times, threatening and assaultive. Exacerbations of his illness have often lasted for several months and these periods of time have often been marked by many emergency room visits and multiple hospitalizations. Significant exacerbations of his illness appear to have occurred in 2001, 2002, 2005, and 2007.  During these episodes, it has taken him weeks or months to return to his baseline functioning.  His treaters have described him during periods of relative stability as being pleasant, relatively co-operative and tending to be anxious, and to live quietly, sticking close to family members.

    4.    I am unable to identify any clear patterns regarding the timing or causes of his decompensations other than that drug use may have been a factor on some, but not all, occasions, and that partial or total noncompliance with or lack of his anti-psychotic and mood-stabilizing medications has seemed to be a factor on most or all of the occasions.

    5.    These two factors, substance abuse and medication non-compliance, are extremely

2    DECLARATION OF J. TERESA SHELBY, M.D., IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

common factors in terms of causing recurrence of symptoms in individuals with psychotic illnesses.

6. On 5/27/07, Mr. Yeo was lodged at Washington County Jail. Documents indicate that it was known that he had mental health problems and was on psychiatric medications and a release of information request was signed for his outpatient treatment provider.

7. Washington County Jail had prior experience with Mr. Yeo during psychotic episodes. It appears he received no psychotropic medication while at Washington County Jail.

8. On 5/29/07 he was transferred to Multnomah County Jail. That same day he was noted to remove his clothes in his cell, to be standing on the toilet doing strange calisthenic-like movements, and to be hearing and seeing things not present. Two separate requests for psychiatric evaluation were apparently filled out on 5/29/07.

9. In the evening of 5/30/07 he was found totally naked and agitated in his cell, mumbling and covered with fecal matter, with urine, food and fecal matter smeared in his cell. He had refused offered medication and was giving nonsense answers to questions. When he was unwilling or unable to co-operate with jail personnel who wished to remove him from his cell so it could be cleaned, there was a struggle which resulted in Mr. Yeo receiving a cut to his eyelid/temple area, and Mr. Yeo being repeatedly tasered.

10. I saw nothing to indicate that any medical assessment was done at that time such as vital signs measurement or assessment of state of hydration.

11. On the morning of 5/31/07, he accepted medication (Haldol and lorazepan) and allowed his laceration to be stitched up. On 6/1/07 he was taken to OHSU and admitted there in

the psychiatric unit on 6/2/07.

12. It is reasonable to conclude that the lack of anti-psychotic medication 5/27-5/30 combined with the stress of incarceration accelerated his process of decompensation.

13. He remained hospitalized at OHSU until 7/17/07 and his hospital course was difficult and turbulent, marked by periods of agitation and persistent psychosis.

14. On 7/23/07 he was back at the OHSU emergency room complaining of increased anxiety regarding his living situation.

15. On 7/28/07 he was back again at the OHSU emergency department after he had become agitated and threatened to blow up his brother's car. It appears from the records that he was put on a doctor's hold and was going to be re-admitted but there were no psychiatric beds, and that after a lengthy stay in the emergency room, he was released on 7/29/07.

16. By early August 2007, he was fairly stable, but still not back to his baseline. By this time he was able to tell his treaters that during the time he was in Multnomah County jail that he thought he was an informant for Washington County and he thought something about Russian cosmonauts telepathically sending him winning lottery numbers and they gave him a mission to save the world. He also had thought that something was implanted in his head when he got the stitches so they could scan his brain. By September 2007 he was described as having good behavior and no signs of psychosis.

I DECLARE THE ABOVE STATEMENT TO BE BASED ON PERSONAL KNOWLEDGE OF THE FACTS ENUMERATED AND TRUE TO THE BEST OF MY

KNOWLEDGE. I AM AWARE THAT THIS DECLARATION IS SUBJECT TO PENALTY FOR PERJURY.

    Executed on June 4, 2010.

                                    /s/ J. Teresa Shelby
                                    _____
                                    J. Teresa Shelby, MD

5    DECLARATION OF J. TERESA SHELBY, M.D., IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT